JoNes, Chief Judge,
delivered the opinion of the court:
The plaintiff sues for salary from November 30,1949, the date on which he was separated from employment with the Maritime Commission as Fleet Electrician, GS-11, at the Mobile Fleet Reserve, Bay Minette, Alabama. The plaintiff is a veteran and is therefore entitled to the rights and privileges accorded to veterans by section 14 of the Veterans’ Preference Act of 1944, 5 U. S. C. 863.
On October 31,1949, plaintiff received a letter dated October 28,1949, notifying him that it was proposed to separate him from the rolls of the Maritime Commission for cause, effective at the close of business November 30, 1949. This letter contained seven charges listed under the headings (1) noncooperativeness; (2) negligence in the performance of duties in the supervision of employees for whom you are responsible; (3) inferior and incompetent handling of electrical preservation duties and resultant excessive operational expenses; (4) lack of dependability and absenteeism in excess of that normally'taken or expected to be taken by a staff member; (5) inability to work in harmony and deal effectively with others; (6) insolence and a disrespectful attitude toward your superiors and officials; and (7) making charges of maladministration which you cannot substantiate. This letter advised plaintiff of his rights to answer and appeal.
Following the rejection of plaintiff’s answer, he was separated at close of business on November 30, 1949, and on December 7,1949, appealed the separation. The appeal was *605 heard by the Tenth Civil Service Eegion on January 18, 1950, and by decision of February 3,1950, the Director, Tenth Civil Service Eegion, ordered plaintiff’s restoration to duty on the ground that only charges sis and seven met the section 14 requirement that charges be stated specifically and in detail, and these charges, on the merits, did not warrant discharge. The Maritime Commission duly appealed this decision, and the case was heard by the Board of Appeals and Eeview of the Civil Service Commission on March 21, 1950, after a postponement from February 28 at plaintiff’s request. In both these proceedings plaintiff was represented by counsel. By letter dated June 8, 1950, with copies to plaintiff and his counsel, the Civil Service Commission advised the Maritime Commission as follows:
The Commission’s Board of Appeals and Eeview and the Civil Service Commissioners, after careful consideration of all the facts and circumstances in this case, including the representations made by members of your Commission and Mr. Thomas X. Clancy of the American Legion, representing Mr. Engelhardt, in the hearing before this Board on March 21, 1950, have found that the action taken by your Commission was warranted. The decision of our Tenth Eegion is hereby reversed and the request for Mr. Engelhardt’s restoration to his position is withdrawn.
Upon objection by plaintiff’s counsel to the form and adequacy of this notice and a request that the Commission further review the case, the chairman of the Commission advised him by letter dated July 14, 1950 (finding 12) that the decision was based on the consideration that charges two, three, six and seven (finding 4) were sufficiently specific and warranted discharge, and further that the case could be reopened, at the discretion of the Commission, upon the submission of new and material evidence. No attempt was made to reopen these proceedings, and the petition was filed in this court on November 29, 1950, alleging various violations of plaintiff’s rights under section 14 of the Veterans’ Preference Act of 1944.
In the absence of a showing that the administrative action here complained of was arbitrary, capricious, or so clearly erroneous as to impute bad faith, we are not authorized to *606 consider the merits of the case but merely whether or not procedural rights have been violated. Eberlein v. United States, 257 U. S. 82; O'Brien v. United States, C. Cls. No. 50394, decided March 3, 1953; Love v. United States, 119 C. Cls. 486, cert. den. 342 U. S. 866. There is no such showing here. The primary questions presented by the instant case pertain to the adequacy of the notice given and the sufficiency of specification and detail of the charges contained in that notice.
The requirement of section 14, supra, that thirty days’ advance notice must be given the preference eligible of the proposed action was complied with here. The notice was received on October 31 proposing to separate plaintiff from the rolls of the Maritime Commission “effective at the close of business November 30, 1949.” It is clearly stated that employment would continue through November 30. Thus by excluding the day on which notice was received from the computation it becomes apparent that the requisite 30 days’ advance notice was given plaintiff. O'Brien v. United States, supra; cf. Stringer v. United States, 117 C. Cls. 30, 48.
The more serious question is whether the charges included met the statutory requirement that the notice state “* * * any and all reasons, specifically and in detail, for any such proposed action; * * *”
The manifest purpose of this provision is to afford the employee a fair opportunity to oppose his removal, and the charges must be considered with the view of determining whether plaintiff was informed of the basis of the proposed action with sufficient particularity to apprise him of allegations he must refute or acts he must justify. The technical rules of criminal proceedings are not applicable here, and the facts and circumstances of a particular case are regarded as important in such an inquiry.
We shall restrict our consideration to charges two, three, six and seven (see finding 4) since these were the basis of the Commission’s decision, and there is little doubt that one, four and five fall short of the standard envisaged by the statute.
While these charges might well have been more specific and in greater detail, we cannot say that, under the circum *607 stances, they were so vague as to constitute a violation of plaintiff’s procedural rights. Charges six and seven seem amply specific. They contained allegations of insolence, disrespect for officials, and unsubstantiated charges of maladministration, citing the dates and subject matter of letters written by plaintiff and directed to named officials within the Maritime Commission. The accusation of negligence in the performance of duties and supervision of subordinate employees contained in charge two was supplemented by reference to reports of surveys concerning plaintiff’s work covering specified periods. Also, records of a meeting, attended by plaintiff on March 23, 1948, are set out as an additional basis for the charge. Charge three relates to alleged inferior and incompetent handling of electrical preservation duties resulting in excessive operational expense. Reference is then made to a “group of six vessels” on which man-hours per vessel were exceeded “* * * up to 1872 man-hours for the Dickinson Victory.” It is true that the charges included rather broad generalizations in addition to the specific items referred to here, but the latter seem sufficient to inform plaintiff of the evidence which would be presented against him and he in fact countered such evidence at the Regional hearing.
We conclude therefore that charges two, three, six and seven were not so vague as to violate the procedural requirements of section 14, and since the decision on the administrative level was based on these charges only, there is no basis for recovery here by plaintiff.
Plaintiff urges that there was never a legally valid decision reversing the holding of the Tenth Civil Service Regional Director and that reference of the decision by the Board of Appeals and Review to the Commission itself for approval was a denial of due process of law. When the record is considered as a whole we do not feel that plaintiff’s position in this regard has substantial merit. The other points raised go to the weight of the evidence, and the merits of the case which, for reasons stated above, cannot be considered here. The petition is dismissed.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitakek, Judge; and Littleton, Judge, concur.
*608 The court, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff is a citizen residing at New Orleans, Louisiana.
2. The plaintiff, a veteran, was employed by the Maritime Commission as a Fleet Electrician, GS-11, at a salary of $5,800 per year, with the Mobile Fleet Reserve, Bay Min-nette, Alabama.
3. By letter dated October 28,1949, the plaintiff was notified that it was proposed to separate him from the rolls of the Maritime Commission for cause, effective at the close of business November 30,1949.
4. The plaintiff received the above letter on October 31, 1949. It contained seven charges as follows:
1. N oncooperativeness. — You have continually failed and have been unwilling to cooperate with the Fleet Captain, Shipkeepers and others upon their request for assistance in the overhaul and repair of electrical equipment. This attitude has been detrimental to duties for which you are responsible and as a result it has frequently been necessary for other officials to assume your responsibilities or delay important work.
2. Negligence in the performance of your duties <md in the supervision of employees for whom you are responsible.■ — Reports of surveys in May 1947, November 1947, and March 1948 of inspection of electrical preservation work indicate a lack of adequate inspection on your part of work completed by employees under your supervision. In several instances electrical units were missed entirely and work spaces were not cleaned. As evidenced by the records of a meeting on March 23, 1948, including yourself and officials of the Mobile Reserve Fleet it was established that you were directly at fault for the poor workmanship on electrical units of men under your supervision. There is continual evidence that you apparently feel your position does not require you to work physically among your employees and to render strict personal supervision. This attitude has served to seriously reduce the effectiveness of yourself and your staff.
*609 3. Inferior and imcompetent handling of electrical preservation duties and resultant excessive operational expense. — The records of comparative costs of electrical preservation wort show that you have repeatedly and without justification exceeded the time allowed for completion of work. For example, when the maximum time was set at 1,424 man-hours per vessel for a group of six vessels it required an average of 1,767 man-hours for you and your staff to complete electrical work on the vessels, ranging up to 1,872 man-hours for the Dickinson Victory. Summary records show that in this respect you have maintained an average of only 81% efficiency, which is directly responsible for considerable additional expense and extra labor time. The electrical preservation work at the Mobile Fleet has not only cost more than necessary but on investigation proved to be inferior in quality.
4. Lack of dependability and absenteeism in excess of that normally taken or expected to be taken by a staff member. — After receiving a “Fair” efficiency rating in April 1948, you absented yourself from duty on the alleged grounds of illness until July 5,1948. You returned to work only when compelled to undergo a physical examination through which you were found fit for active duty. _ Although you were found physically able to return in this examination on June 3 and 4 you did not avail yourself for work until July 6, 1948. Your leave record shows that you have consistently used most of your sick leave as it accrued. You have failed to display any genuine concern for the delay of work and expense due to your absence. This action has caused no little inconvenience in carrying out electrical preservation work and is considered responsible for much of its delay and inferiority.
5. Inability to work in harmony and deal efectively with others. — On numerous occasions you have instigated heated discussions and disputes with officials and employees and conducted yourself in a manner extremely unbecoming to your position. This continual contention for which you are basically responsible has had a demoralizing effect. Your belligerent attitude will not be tolerated and is considered unreasonable and degrading.
6. Insolence and a disrespectful attitude toward yow superiors and officials. — As evidenced by our records you have continued to send curt and abrupt correspondence when requesting and when replying to routine matters, efficiency rating appeals, and medical examination. Your letter of August 24, 1949, addressed to the Fleet *610 Superintendent, Mobile Reserve Fleet, concerning a reply to advanced notice of proposed suspension is typical of the unethical tactics you have used. It has been extremely difficult and often futile for officials to attempt a discussion with you in an orderly fashion.
7.Making charges of maladministration which you could not substantiate. — Your letters of August 24,1949, and September 1, 1949, addressed to the Fleet Superintendent and Chief, Division of the Reserve Fleet, respectively, were not only discourteous but contained serious charges against the organization. You were requested and given an opportunity to explain these statements and failed to furnish a satisfactory or conclusive reply. Your complaints and unwarranted charges have made it necessary for us to conduct expensive investigations and spend considerable time in these channels while other important work has been delayed. We consider these grave allegations made by you to be totally unfounded.
The above letter also advised him of his right to answer the charges and of his appeal rights. The plaintiff, by letter dated November 9, 1949, replied to the above charges.
5. On November 28,1949, the agency rejected the plaintiff’s reply as inadequate, and advised that the action to separate him at the close of business on November 30,1949, would be carried out. The plaintiff was separated on November 30, 1949, at the close of business.
6. On December 7,1949, the plaintiff appealed his separation to the Fifth Civil Service Region, which appeal, upon the plaintiff’s request, was transferred to the Tenth Region in New Orleans, Louisiana.
7. The plaintiff’s appeal to the Tenth Region was heard on January 18, 1950. The Director of the Tenth Region sustained the plaintiff’s appeal and ordered the plaintiff’s restoration to duty by decision dated February 3, 1950.
8. The Maritime Commission filed an appeal from the above decision with the U. S. Civil Service Commission, Washington, D. C., on February 10,1950.
9. A hearing before the Board of Appeals and Review was scheduled for February 28, 1950, which was postponed to March 21, 1950, upon request of the plaintiff’s counsel. On March 21, 1950, the agency’s appeal was heard before the Board of Appeals and Review at which time the plaintiff was *611 represented by counsel supplied by the American Legion. The appeal of the agency was based solely upon the seven original charges preferred against the plaintiff in the letter of October 28,1949.
10. By letter dated June 8,1950, addressed to the agency with unsigned copies to the plaintiff and plaintiff’s counsel, both local and resident, the Board of Appeals and Review announced reversal of the decision of the Tenth Region, stating:
The Commission’s Board of Appeals and Review and the Civil Service Commissioners, after careful consideration of all the facts and circumstances in this case, including the representations made by members of your Commission and Mr. Thomas X. Clancy of the American Legion, representing Mr. Engelhardt, in the hearing before this Board on March 21, 1950, have found that the action taken by your Commission was warranted. The decision of our Tenth Region is hereby reversed and the request for Mr. Engelhardt’s restoration to his position is withdrawn.
11. On June 20,1950, the plaintiff’s attorney objected, in a letter addressed to the Chairman of the Civil Service Commission, to the form and inadequacy of notice received by the plaintiff of the Commission’s decision and also requested information as to whether the plaintiff had exhausted all his administrative remedies. This letter read as follows:
Mr. Engelhardt received on June 12,1950, an unsigned copy of a letter dated June 8,1950, addressed to one Mr. WiÜiam Kerr Bassett, Chief, Employment Branch, U. S. Maritime Commission, Washington 25, D. C., which has been the only notice to him that the decision of the Tenth Regional Office was reversed and the order of his reinstatement withdrawn. It is stated in this letter that the Civil Service Commission as well as the Board of Appeals and Review had “after careful consideration of all the facts and circumstances in this case, including the representations made by members of your commission and Mr. Thomas X. Clancy of the American Legion, representing Mr. Engelhardt,” found the dismissal of Mr. Engelhardt warranted. Significantly, Mr. Engelhardt was not notified of the referral of this case to the full Commission, nor given an opportunity to present his case, either by brief or personal representation. Therefore, it is respectfully requested that the case be *612 reviewed by the U. S. Civil Service Commission, and an opportunity afforded Mr. Engelhardt to present his brief.
In making this request, we are handicapped in that in order to make an intelligent request for review the reasons for the decision would afford some basis for understanding this reversal of the “court of original jurisdiction”. Therefore, in addition to the above, it is respectfully requested that the reasons for the decision of reversal be given to or made available to Mr. Engel-hardt. Also in the brief of Mr. Engelhardt, specific rulings were requested on three points of law, but to this writing, no notice of the rulings have been furnished my client.
In the event further review is not now in order, your specific affirmative statement that all administrative remedies have been exhausted would be appreciated.
Your favorable consideration of the request for review of this case, which we sincerely and honestly believe represents an injustice to an efficient career employee, will be appreciated.
12. By letter dated July 14, 1950, the Chairman of the Commission replied to the plaintiff’s counsel as follows:
I am referring to your letter of J une 20,1950, in behalf of your client, Mr. August J. Engelhardt, whose appeal under Section 14 of the Veterans’Preference Act of 1944 has been considered by our Tenth Regional Office, our Board of Appeals and Review, and the Commission.
The decision of the Commission and our Board of Appeals and Review, reversing the previous decision of our Tenth Region, was based on the consideration that charges 2,3, 6, and 7 were specific and in detail; that the U. S. Maritime Commission did not prefer charges arbitrarily or capriciously, but only after considerable provocation extending over a period of more than two years; that Mr. Engelhardt was warned on numerous occasions regarding shortcomings in his work and apparently showed no improvement; and that his charges of maladministration were serious and embarrassing to his agency and, proven unfounded, were indicative of an irresponsible employee. Further, in spite of the fact that the charges, in part, are procedurally defective, there appeared sufficient grounds on the remaining charges to warrant the action of the agency.
In your letter you request rulings on three points of law mentioned in your brief. A careful review of this brief reflects requests for specific rulings on only two *613 points. There are included numerous rhetorical questions but direct requests for rulings are as follows:
1. You object to introduction of evidence on those charges lacking specificity and state that this action so prejudiced your case that the appeal should have been dismissed;
2. You contend that the delay in submission of evidence by the Maritime Commission past the date of February 20, 1950, is ground to consider this appeal of the Maritime Commission not properly taken and as such should not be entertained by the Board.
As I have previously stated, those charges which lack specificity were not considered in our decision. This, I believe, answers your request number one. As for dismissal of a case because of delay in submission of evidence, I note that although protested evidence was submitted subsequent to February 20,1950, hearing was held in this case on March 21,1950, and it does not seem the aforementioned delay was prejudicial to the appeal of your client since ample time elapsed prior to hearing to afford opportunity to answer.
Under the Commission’s procedures the case may be reopened and further consideration given the case at the discretion of the Commission upon the submission of new and material evidence which in the opinion of the Commission warrants such action.
A reopening of the case as outlined above is the only further review provided for under the Commission’s regulations.
13. The plaintiff has not sought to reopen his case before the Commission by submitting new or material evidence.
14. During the period from November 30,1949 to May 21, 1952,- the date of trial in this case, the plaintiff earned through other sources the sum of $6,541.04 of which amount the sum of $212 represents earnings performed outside his regularly scheduled work day.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.
Judgment is rendered against the plaintiff for the cost of printing the record herein, the cost thereof to be entered by the clerk and collected by him according to law.