**Dr. John F. SUESS, Plaintiff,**

**v.**

**Dr. A. E. PUGH, Hospital Director of Veterans' Administration Hospital, Clarksburg, West Virginia, the United States Veterans' Administration, and United States of America, Defendants.**

**Civ. A. No. 828–F.**

United States District Court
N. D. West Virginia,
at Fairmont.

Sept. 21, 1965.

A. Blake Billingslea, Roderick A. Devison, Fairmont, W. Va., for plaintiff.

John H. Kamlowsky, U. S. Atty., John C. Solomon, Asst. U. S. Atty., Fairmont, W. Va., Emmette L. Mosley, Chief Attorney, Veterans Administration, Huntington, W. Va., for defendants.

CHRISTIE, District Judge:

The broad purpose of this suit is to restrain and enjoin the defendants from terminating the employment of the plaintiff as a physician at the Veterans' Administration Hospital at Clarksburg, West Virginia.

The defense has moved for an order to dismiss The United States Veterans' Administration and United States of America as defendants on the ground that suit may not be maintained against The United States Veterans' Administration under Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534; Declet v. Veterans' Administration, D.C., 129 F.Supp. 566, or against the United States of America under Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065; Anderson v. United States, 229 F.2d 675 (5th Cir.). Believing the motion to dismiss to be well taken, the complaint is dismissed as to The United States Veterans' Administration and the United States of America. The Court further finds that the Amended Complaint, absent The United States Veterans' Administration and United States of America, as defendants, may be filed. The maintenance of the action as to the remaining defendant, Dr. A. E. Pugh, Hospital Director of Veterans' Administration Hospital, Clarksburg, West Virginia, is found to be authorized by 28 U.S.C.A. 1361. This defendant has moved to dismiss or in the alternative for summary judgment for the reasons and on the ground that there is no issue of material fact existing and that he is entitled to judgment as a matter of law.

It would appear from the record before the Court that Dr. Suess' appointment and tenure are governed by 38 U.S.C.A. 4106, dealing with the appointment of physicians, dentists, and nurses by the Department of Medicine and Surgery within the Veterans' Administration. Subsection (a) of that section provides that such appointments shall be "in accordance with regulations prescribed by the Administrator, without regard to civil service requirements"; that such appointments shall be for a "probationary period of three years," and that they shall be "reviewed from time to time by a board, appointed in accordance with regulations of the Administrator, and if said board shall find (them) not fully qualified and satisfactory (they) shall be separated from the service." Thus, the Congress by this enactment has clearly spelled out:

(1) That Dr. Suess' appointment must be in accordance with regulations prescribed by the Administrator, without regard to civil service requirements; and

(2) That it must be for a probationary period of three years and shall be reviewed from time to time by a board appointed in accordance with regulations prescribed by the Administrator, and if said board shall find him not fully qualified and satisfactory, he shall be separated from the service.

It is readily seen, therefore, that under this statute Dr. Suess could receive no tenure appointment for any definite period of time, and that by his appointment, he acquired no civil service status. This is made clear by the statute itself, irrespective of any regulations of the Administrator.

So, there can be no doubt but that under this statute Dr. Suess could be, and was, hired on a provisional basis only, regardless of the wishes of the Administrator or anyone else. Thereunder he could not, and did not, acquire any vested right in the job to which he was appointed for any definite duration of time. This is the crux of the case.

Pursuant to the authority expressly given him by the statute to do so, the Administrator promulgated certain rules and regulations. Those pertinent to this case are found under Chapter 4—Probationary Period—MP–5, Part II, as supplemented June 1, 1964, 4.01—of the Manual. An examination thereof discloses no fundamental conflict therein with the statute. They do no more than implement it by setting up standard procedure governing physicians, dentists and nurses during their three-year probationary period. Their general import would appear to be reasonable and necessary in the premises. However, the plaintiff has raised certain questions with respect to whether or not some of these procedures were followed by the Professional Standards Board.

*First*, the Court finds that the procedure provided for by 38 U.S.C.A. 4106 and the Veterans' Manual 4.05 (periodic reviews) was substantially followed and complied with in this case.

*Second*, the Court finds that on the issue of notice that Dr. Suess had sufficient notice with respect to the charges against him. The record shows that Dr. Suess was duly notified of the nature of the hearing and was given ample opportunity to appear and defend himself. Indeed, the Board appears to have been quite generous with him in this respect. At his request, it granted a continuance from July 6 to July 19—four days more than he requested. At the end of this 14-day period, he appeared before the Board and submitted a written statement affirming his fidelity to his patients and avowing his competence as a doctor, but voicing objections to the attitudes of certain unnamed Chiefs to Services; declining, however, to elaborate further or to answer any questions due to his stated belief that he was entitled to be represented by counsel at the hearing.

While the June 14, 1965 notice of the first hearing, scheduled for July 6, 1965, did not spell out in detail the specific infractions charged to Dr. Suess, it did, nevertheless, inform him of the general nature of same in these words:

"The Board will consider your interference with the administration of other hospital services despite repeated counselings, attempts to discredit and undermine the authority of the hospital director, ineptness in your administrative and professional relationships with professional staff members and others of the hospital staff."

Furthermore, the proceedings of the July 6 session of the Board, attended by Dr. Suess, as revealed by the transcript thereof, are convincing evidence that Dr. Suess at that time knew of the nature of the complaints against him. Had he not known, he would have undoubtedly asked the Board for specifications at that time, which he did not do, because the transcript shows that the very purpose of his appearing before the Board was to get a continuance to enable him to prepare his defense. Nor did he complain, according to the transcript of the July 19 hearing, that he did not know the nature of the charges against him. The notice of the hearing and the purpose thereof are found to meet legal requirements. Baughman v. Green, 97 U.S.App.D.C. 150, 229 F.2d 33; Blackmar v. United States, 120 F.Supp. 408, 128 Ct.Cl. 693.

It also appears that Dr. Suess was aware of the nature of the charges because on previous occasions, prior to the hearing, these matters had been discussed with him by Dr. Pugh, as well as his supervisor, Dr. Jones. This knowledge, coupled with the notice and the extension of time granted him to prepare his case, did satisfy any requirement with respect to notice so as to enable him to properly prepare his defense.

*Third*, the matter of the regulation that deprives a probationary employe, such as Dr. Suess, of the right to legal representation before the Professional Standards Board, requires close scrutiny, but it must be considered in the context of the principle that there is no constitutional right to Federal employment.

The right to legal counsel must be found in the Constitution of the United States under the Fifth or Sixth Amendment or by some Act of Congress or some rule or regulation of an agency or administrative tribunal under which the individual functions. The Court is unable to perceive that there is any Constitutional right of counsel in a civil case or in a civil matter pending before an administrative agency. The right to counsel under the Sixth Amendment clearly applies to criminal cases only. Under the due process clause of the Fifth Amendment to the Constitution, the Court is unable to find any violations of due process by the denial of counsel in this case.

Moreover, the functions of the Professional Standards Board are fact-finding and non-adjudicative in nature and they do not rise to the level of judicial determination. Under such circumstances, the safeguards of the ordinary judicial trial are not required. Taft v. Commissioner of Internal Revenue, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393; Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377; Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307; Cafeteria, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230; Malan Const. Corp. v. United States, 318 F.2d 709 (2d Cir. 1963); and F. C. C. v. Schreiber, 329 F.2d 517 (9th Cir. 1964).

Dr. Suess was appointed on a "trial basis" only. He had no permanent status and could acquire none until the expiration of three years. His appointment, during his probationary period, was made subject to review from time to time and was terminable at the will of the reviewing authority. His consequent separation from the service of the hospital within this trial period cannot, therefore, be said to have deprived him of any substantial right.

There is nothing before the Court by way of any Act of Congress which gives to Dr. Suess the right to legal counsel in such matters. The Court has examined the Administrative Procedure Act, Title 5 U.S.C. 1001, and, although this Act provides in Section 1005(a) that "[a]ny person *compelled* to appear in person before any agency or representative thereof shall be accorded the right to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative," it does not inure to the benefit of Dr. Suess because, under Section 1004, such right does not extend to "(2) the selection or tenure of an officer or employee of the United States other than *examiners* appointed pursuant to section 1010 of this title." Clearly, Dr. Suess is not an "examiner" within the purview of this section.

But assuming that the Administrative Procedure Act applied to a person in Dr. Suess' position, he could not avail himself thereof because he "was not *compelled* to appear in person before the agency." The notice, informing him of the date and time of the hearing and giving him information as to the nature and purpose thereof, was *non-compulsory*. See Attorney General's Manual on the Administrative Procedure Act, 1947, 61–62, where it said:

> "It is clear, of course, that this provision (of counsel) relates only to persons whose appearance is compelled or commanded, and does not extend to persons who appear voluntarily or in response to mere request by an agency."

The 4.06(b) (4) section of the Veterans' Rules and Regulations provides that "he (Suess) is not entitled to legal or other representation; however, upon request, he will be given assistance in preparing his case, or he may seek assistance in his behalf from within the Veterans' Administration." It is clear

from the record that Dr. Suess neither sought nor desired legal or other help from within the Veterans' Administration. Since the agency under which Dr. Suess was employed did not give him a right to legal counsel, he, nonetheless, could have availed himself of other help within the Veterans' Administration. This he declined.

The separation order complained of by Dr. Suess does not purport to take from him his constitutional right to seek and hold employment of a like or similar nature with any other branch or agency of the Federal Government, or in private hospitals, or as a private practitioner. It does not in any way impinge his professional standing or ability, or bring into question his patriotism, nor does it reflect upon his character or integrity. At most, it simply points up a clash of personalities and, perhaps, a difference of opinion as to how the hospital could best be run. Consequently, this case is distinguishable from the "security risk" cases briefed by counsel for the plaintiff. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; Greene v. McElroy, supra, 360 U.S. 474, 79 S.Ct. 1400. In those cases, the employees were not only separated from their jobs, but were placed under such a stigma as to substantially take from them the opportunity of holding employment elsewhere. There the question had to do with the establishment of unfitness because of suspected disloyalty without giving the employees an opportunity to defend themselves; while here it would be most difficult to envision that the separation order and the reasons assigned therefor could operate as a serious deterrent to Dr. Suess' gaining employment elsewhere in his chosen profession. The Court, therefore, finds that the termination of Dr. Suess' employment, under the circumstances shown by the record in the case, does not deprive him of any substantial right and is not violative of the due process clause of the Constitution. Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81

S.Ct. 1743, 6 L.Ed.2d 1230; Niznik v. United States, 6 Cir., 173 F.2d 328; United States v. Pitt, 3 Cir., 144 F.2d 169.

Fourth, the plaintiff has raised the issue that there existed between the Veterans' Hospital and the Union of which Dr. Suess was a member, a contract which gave to the Union a right to scrutinize or become involved in matters of hiring and firing of employees of the Veterans' Hospital who were members of the Union. The Court finds that the Executive Order No. 10988 of January 19, 1962, which created the rights of the Union to bargain and become affiliated with such governmental agency, expressly excluded any right of Union with respect to the hiring or firing process or procedures of any such agency. In Article 4, Section 8, of the basic agreement between the Veterans' Administration Hospital and Lodge 2384, American Federation of Government Employees, it is provided that "nothing in this agreement shall restrict the Veterans' Administration in exercising the right, in accordance with the applicable laws and regulations to (a) direct employees of the Veterans' Administration, (b) employ, promote, transfer, assign and retain employees in positions within the Veterans' Administration, and to suspend, demote, remove or take other disciplinary action against employees, (c) relieve employees from duties because of lack of work or for other legitimate reasons, (d) maintain the efficiency of the governmental operations entrusted to the Veterans' Administration, (e) determine the methods, means and personnel by which such operations are to be conducted, and (f) take whatever actions may be necessary to carry out the mission of the Veterans' Administration in situations of emergency." The Court finds, therefore, that under the executive order, as well as the explicit language in the Union contract itself, the Union has no rights whatsoever with reference to the manner, means or method of the discharge of Dr. Suess.

Fifth, the plaintiff on another procedural point, has raised the issue of

the manner of approval of the findings of the Professional Standards Board. The Court has again examined the Veterans' Administration rules and regulations and finds that the Professional Standards Board is a fact-finding board which makes findings of fact, and, under 4.06(b) (3) and 9.03(c) (1) (a), makes recommendations to the Area Medical Director, who, in actuality, terminates the employment of the employee. A letter of July 29, 1965, to the Hospital Director stated that,

> "The Professional Standards Board action and related material has been thoroughly reviewed and I have approved the recommended termination action during the probationary period of Dr. John F. Suess."

This letter was signed by D. R. Robinson, M.D., Staff Assistant to the Chief Medical Director. By a DM & S Circular 10–65–198, which became effective June 30, 1965, the Area Medical offices were abolished and the personnel of these offices were assigned to the office of the Chief Medical Director. Former Area Medical Directors have been designated as staff assistants to the Chief Medical Director with the same functions as had previously been performed. The Court, therefore, finds that the action by the Professional Standards Board with reference to the procedure of termination of the employment of Dr. John F. Suess was in fact in compliance with the applicable Veterans' Administration provisions.

■ *Sixth*, the plaintiff maintains that there was bias and prejudice with respect to the members of the Professional Standards Board. The Court finds that the record reveals no evidence of such bias or prejudice. In fact, Dr. Jones, who prepared the report necessary for a periodic review of Dr. Suess' probationary period, though a member, voluntarily disqualified himself from sitting on the Board.

The Board was originally comprised of five members with the Chief of the Personnel Division sitting as technical adviser. In the case of Dr. Suess, Dr. Charles A. Jones and Dr. Thomas M. Snyder did not serve because of their closeness to the facts and the nature of the charges confronting Dr. Suess. The other three members of the Board, Dr. Walter H. Gerwig, Jr., Dr. Neil M. McFayden and Dr. Charles M. Easley, as appears from the record, afforded Dr. Suess every right to which he was entitled. No evidence was submitted by him of any bias or prejudice on their part to disqualify them from reviewing his case. Under 4.06(c) (9) of the Veterans' Administration rules and regulations, it is provided,

> "Persons in a position to prejudice the action of the Board may not serve as members of the Board conducting the review."

Thus, the actions of Dr. Jones and Dr. Snyder in not participating in the review were in strict compliance with this regulation. The Court accordingly finds that there has been no violation with respect to this rule.

■ Dr. Suess is before this Court seeking what amounts to a "preventive injunction" commanding the defendants to refrain from carrying out the order of the Chief Medical Director of the Veterans' Administration of the Professional Standards Board, terminating Dr. Suess' probationary appointment. The relief thus sought is extraordinary in character and is within the sound discretion of the Court to grant or refuse.

■ ■ The true function of this Court in this review is not "to substitute its opinion for that of any administrative agency duly authorized under Congress to administer its affairs," but to determine whether or not such administrative agency has acted capriciously or arbitrarily or has abused its authority or deprived one of a substantial right recognized by law and that such agency has fully followed all of the rules, laws and regulations under which it functions. The Court, in cases of this nature, serves to act as a reviewing authority for the actions of an administrative agency but

with no authority to substitute its opinion for that of such agency. McTiernan v. Gronouski, 337 F.2d 31 (2d Cir.); Seebach v. Cullen, 338 F.2d 663 (9th Cir.); Powell v. Brannon, 91 U.S.App. D.C. 16, 196 F.2d 871; Capolino v. Kelly, 236 F.Supp. 955 (S.D.N.Y.); and Baum v. Zuckert, 342 F.2d 145 (6th Cir.); McEachern v. United States, 212 F.Supp. 706 (W.D.S.C.) This is the function which this Court feels it has endeavored to perform in this case. To grant the relief which the plaintiff requests, this Court must find that it has been clearly shown the administrative agency has acted arbitrarily or capriciously, or has abused its authority, or has not followed the laws, rules and regulations under which it functions or that the petitioner has been deprived of a substantial right recognized by law, and that there is no other adequate remedy. No such finding is justified by the record in this case. Furthermore, in the exercise of this discretionary power to give or refuse relief in this sort of case, the Court must look at both sides in a broad rather than a narrow sense. Thus, the Court cannot ignore the fact the record discloses that considerable hostility exists between Dr. Suess and the Hospital Director and other members of the administrative staff, and that it is of such a deep-seated nature as to dispel any hope of peaceful resolution. The Court, when confronted with such a situation, must be conscious of the effect its ruling will have upon the institution itself and the people it is designed to serve. This Court is convinced from a review of the record before it that to continue Dr. Suess' appointment would neither serve his best interests nor those of the institution or the public generally.

In summary the Court finds and concludes:

(1) That Dr. Suess *did* have adequate notice of the hearing before the Professional Standards Board;

(2) That he *did* have adequate information as to the nature of the charges and the purpose of the hearing to enable him to prepare his case;

(3) That he *was* accorded ample opportunity to appear before the Board and state his case;

(4) That he *did* appear in person before the Board, submitting a written statement in his behalf, and was given a fair and lawful hearing;

(5) That, while he was denied the right of independent counsel, he *was* offered assistance in preparing his case, and *was* advised of his right to seek assistance from within the Veterans' Administration, neither of which he availed himself of;

(6) That *all* administrative procedural steps *were* properly taken and substantially complied with, in accordance with the law and the applicable rules and regulations, in the processing of his case;

(7) That the order of the Chief Medical Director, dated 7–29–65, terminating his probationary appointment, pursuant to recommendation of the Professional Standards Board, *did not* deprive him of any substantial right protected by the Administrative Procedure Act or guaranteed him by the Constitution or the due process clause thereof.

(8) That none of the agreements between the Veterans' Administration Hospital, Clarksburg, West Virginia, and Lodge 2384 of the American Federation of Government Employees, give to the Union any right to control the method, manner, means or right of the governmental agency involved to discharge Dr. Suess under the circumstances, and for the reasons, shown in this case;

(9) That there was no bias or prejudice shown to exist by any member of the Professional Standards Board participating in the review tending to vitiate their action therein; and

(10) That Dr. Suess has failed to show any entitlement to the relief sought.